IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| PACIFIC SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ROBERT ALTMAN and OGLETHORPE BANK, | ) ) )  CIVIL ACTION NO. CV207-068 ) |
| Defendants/Counter-claimants. | ) ) ) |
| FILES INSURANCE AGENCY, INC. and CONNIE DIANE FILES, | ) ) ) ) |
| Intervenors. | ) |

**SETTLEMENT MEMORANDUM OF ROBERT ALTMAN, SARA ALTMAN[1], AND OGLETHORPE BANK, DEFENDANTS/COUNTER-CLAIMANTS**

THIS MATTER is presently before the Court on a court-ordered settlement conference scheduled for 10:00 a.m. on Thursday, January 31, 2008, in Brunswick, Georgia. The following will provide a synopsis of the case from these parties' perspective and comments on the status of settlement discussions.

UNDERLYING FACTS[2]

In broadest terms, and without intending to provide an exhaustive list of their claims and theories of recovery, the Altmans and Oglethorpe Bank ["the Bank"] have a failure to

---

[1]Sara Altman is not actually a party to this action, but is a party to the underlying Superior Court suit.

[2]The Altmans' damages action in Superior Court of Glynn County against the Files Insurance Agency, Connie Files [the "Files defendants"], and Pacific Speciality Insurance Company ["PSIC"], and their counterclaims and the counterclaim of Oglethorpe Bank in this federal declaratory action are relatively detailed.

procure insurance claim against Ms. Files and her agency, as well as claims for willful misconduct giving rise to punitive damages and attorneys fees.

The Altmans and the Bank contend that PSIC is liable not only because the negligence and misconduct of Ms. Files is imputable to PSIC, but also because independent tortious conduct by PSIC exacerbated and independently caused substantial additional damages which are proximately related to the misconduct of the Files defendants and PSIC, and because PSIC breached its contract with the Altmans.

Robert ("Robbie") and Sara Altman were both born and raised in Glynn County. They have two children, Zach approximately 11 years of age, and Simon, about to be 9 years of age. Robbie Altman is a general contractor with a reputation in the community for superior home construction. Sara Altman has a real estate license and has earned income as a real estate agent, though personal difficulties brought on by the circumstances giving rise to these legal actions have caused her employer to require that she be "inactive" until this matter can be resolved. This is a microcosm of the personal and financial hardship brought about for the Altmans due to the combined misconduct of Connie Files and PSIC.

Robbie Altman, who is now approximately 36 years of age, bought his first real property at the age of 17 and had it paid off in 4 years. Shortly after that he built his first "spec" home. Other spec homes were constructed and sold. Mr. Altman was out of the construction business for about 6 years, and then got back into it approximately 6 or 7 years ago. On average, he has built about 2 homes per year for a total of roughly 12 - 15 residences.

In January 2006, Mr. Altman began hauling dirt for construction of a home at 144 Harbor Pointe Drive on Oak Grove Island. By the end of 2006, this exceptional home,

in what is probably the most upscale neighborhood on mainland Glynn County, was within a few weeks of completion. It consisted of some 3,400 sq. ft. of heated space, and 4,600 sq. ft. total. The residence would have been marketed for approximately $650,000.00.

Mr. Altman already owned the lot, and through other borrowing and contribution of personal funds, had created the concrete slab upon which the residence was to be constructed. He had a construction loan with Oglethorpe Bank in the amount of $388,000.00, virtually all of which had been drawn and applied to the project. The Altmans had roughly $60,000.00 of their own funds in the construction project.

On December 26, 2006, a worker on the job site accidentally ignited a fire while spraying highly flammable foam, resulting in heavy damage to the home. While a visual inspection of the interior portions of the home might not have indicated the full extent of the damage to the custom roof truss, wiring, and plumbing due to fire, and the water used to extinguish the fire, the damage was such that Mr. Altman could not repair the home and provide a warranty with it. In order to sell a warrantied structure, his only alternative was to tear the house down and rebuild it from the slab up.[3]

FACTS PARTICULARLY RELATED TO LIABILITY OF
THE FILES DEFENDANTS AND PSIC

Connie Files and her husband Fred were deposed on October 24, 2007. She testified that she had "binding authority" for PSIC that was good for a period of at least 15 days and that she so advised the Altmans in the fall of 2006. Ms. Files had previously been employed

---

[3] In June of 2007, after the filing of the Superior Court suit and this declaratory judgment action, Mr. Altman was able to sell what remained of the home "as is" for what is essentially the value of the lot and concrete slab: $230,000.00. This amount was insufficient to pay off Oglethorpe Bank, much less cover the Altman's out of pocket investment in the construction and their substantial ensuing damages.

by the Jeff Guest Agency which had handled insurance for the Altmans for many years. Ms. Files did not want the responsibility of handling her own agency, but at the urging of her husband, the two opened the Files Insurance Agency in September 2006. Ms. Files was anxious to write business to get her new agency off the ground, and informed the Altmans that she could save them money on their insurance. Relying on this and other representations made by Ms. Files, the Altmans asked Ms. Files to obtain builders risk insurance to replace a Zurich builders risk policy (issued by the Jeff Guest Agency while Ms. Files was working there) when the latter expired.

Instead of obtaining a builders risk policy, Ms. Files obtained a homeowners policy, despite the fact that it requires the covered premises to be the primary residence of the insured. Ms. Files testified that when she communicated with PSIC before submitting the application in question, PSIC informed her that she could write a homeowners policy.

The application submitted by Ms. Files was full of erroneous information which had been put on the application by her. In violation of PSIC guidelines, the application was not submitted to the Altmans for review and signature, but was instead signed by Ms. Files in Sara Altman's name.

As she had done on prior occasions through their business dealings, Ms. Altman left 2 signed blank checks with Ms. Files to pay for the insurance that the latter was to procure. One of these was to be for flood insurance and the other for a builders risk policy, both for the residence at 144 Harbor Pointe Drive. Ms. Files conceded in her deposition that the notations "BR" for builders risk on one check and "Fld" for flood on the other appear to be in <u>her</u> handwriting. This confirms that she knew the Altmans wanted builders risk insurance.

Importantly, the insurance application for the policy in question was dated December 23, 2006. Even if for some reason it was considered that the insurance had been applied for on the date Ms. Altman delivered the signed, blank checks, December 14, 2006, in either event the fire loss on December 26, 2006, giving rise to this situation, occurred within the 15 day "binding authority" period. Also importantly, the Altmans indisputably <u>did not</u> receive a policy or copy of the erroneous application submitted by Ms. Files prior to the fire, so the body of law charging insureds with knowledge of the provisions of their policies, etc., is completely inapplicable.

With regard to the incorrect information that was put onto the application by Ms. Files, she essentially stated that she apparently confused the subject residence with some other piece of property. Her failure to have the application reviewed and signed by the Altmans, as required by PSIC guidelines (which were known to Ms. Files but not to the Altmans), meant that the Altmans had no way of knowing about the false information in the application until after the fire. She admits in her deposition that the Files defendants <u>do not</u> contend that either of the Altmans deliberately misled her or gave her any false information in connection with making the application or obtaining the PSIC coverage.

PSIC has stated that it is not relying on misrepresentations in the application as its basis for contending noncoverage but, instead, that the language of the policy it issued simply cannot provide any coverage in this situation because, as the Altmans have consistently stated, this was a spec home, not their primary residence. However, given that PSIC has never denied coverage in the matter and did not cancel the policy on 144 Harbor Pointe Drive until September 15, 2007, some 9 months after the incident, the PSIC argument appears, at best, circular. What, then, <u>did</u> they insure after receiving and

accepting the Altmans' premiums?  The Altmans and the Bank contend that not only is PSIC legally responsible for the actions of Ms. Files, but also that independent acts subsequent to the loss by PSIC create actionable conduct, that a contract existed between PSIC and the Altmans which PSIC breached, and that PSIC has acted in bad faith.

A brief description of PSIC's actions and inactions follow:  The PSIC policy was issued for the period 12/23/06 - 12/23/07.  On January 4, 2007, a representative of PSIC took a recorded statement from Sara Altman.  At least by this point in time, which is only some 9 days following the loss, PSIC knew that this was not the primary residence of the Altmans.  On January 6, 2007, an adjuster working for PSIC did an inspection of the fire-damaged property and on January 15th, turned in a report valuing the loss at $275,256.41.

Throughout the month of January 2007, a PSIC representative had several conversations with the Altmans, during the last of which, on January 29, 2007, he indicated that PSIC was still reviewing the matter, and that relevant company personnel were to meet on February 2, 2007, and would then advise the Altmans regarding coverage.  Instead, on February 2, 2007, PSIC informed the Altmans that the matter was being turned over to a Georgia attorney, who turned out to be Randall Moody of Mr. Burke's firm.  During February 2007, Sara Altman communicated with Mr. Moody who informed her that he would need "a few weeks" to review the matter and could not tell her anything definitive at that point.  Also during February 2007, Sara Altman was provided with documentation indicating that PSIC had reserved the claim at $327,450.00.

In late February 2007, Mr. Moody wrote a letter to the Altmans, on behalf of PSIC, offering $125,000.00 if they would assign their rights against Files to PSIC.

On April 13, 2007, an examiner for PSIC wrote to undersigned counsel indicating that a reinspection was being requested. This resulted in the insurer's adjuster agreeing with Mr. Altman that the residence was a total loss.

Then, in a June 1, 2007, letter the PSIC representative again wrote to the undersigned, stating they (PSIC) were "continuing their investigation". This was 2 days <u>after</u> Paul Burke's letter dated May 30, 2007, to the undersigned, transmitting a copy of the declaratory judgment action now pending. PSIC has <u>never</u> denied coverage. Had they done so, the E&O carrier for the Files defendants would have seen immediately that failure to procure insurance on the part of Ms. Files had, indeed, occurred. Instead, PSIC continued for months after the loss, through at least the beginning of June 2007, to lead Ms. Files and the Altmans to believe that the insurer could or would conclude that coverage existed.

Although the policy provided that during its first 60 days, PSIC could cancel the policy for <u>any</u> reason, PSIC took no such action. Rather, they retained the premium paid by the Altmans and even paid Ms. Files a commission on it. Even when informed that Mr. Altman had sold the insured premises in June 2007, PSIC did not cancel the policy and/or refund the unearned premium. Rather they retained the consideration for the contract of insurance under which they have steadfastly refused to perform. Not until September 15, 2007, in fact, several months after the subject property was sold, did PSIC issue a cancellation notice, and a premium refund of less than $20.00.

DAMAGES AND SETTLEMENT NEGOTIATIONS

The Altmans losses far exceed simply the lost value of the subject property. As described by Mr. Altman in his deposition, due to the freezing of accounts and limitations

on his ability to borrow, the Altmans went into a financial meltdown that continues through the present.

On June 25, 2007, Plaintiffs made a demand of $1,350,000.00. That damages demand broke down as follows (generally rounded off to the nearest hundred):

| | |
|---|---|
| Lost value of house excluding value of lot | $ 445,000.00 |
| Interest for the last 3 months (which gives allowance for average time on the market of Mr. Altman's homes)[4] | $ 8,200.00 |
| Lost value of various equipment sold at "fire sale" prices due to financial exigencies, including an excavator, bulldozer, backhoe, dump truck, etc. | $ 53,300.00 |
| Lost value of a barge sold under the same circumstances | $ 43,600.00 |
| Lost value of other land which, like the equipment listed above, had to be sold below market value | $ 86,000.00 |
| Twenty-five percent (25%) statutory penalty on only the face amount of the policy[5] | $ 97,250.00 |
| Punitive Damages | $ 250,000.00 |
| Attorney's fees (40%) | $ 393,340.00 |
| *Total* | *$ 1,376,690.00* |

It should be noted that the PSIC policy has a provision that increases the face amount of the policy by 25%, which in this case would make the face amount of the policy $486,250.00. The Altmans paid for this coverage.

---

[4]There has now been considerable additional interest since June 25, 2007.

[5]Through inadvertence, this letter erroneously stated the statutory penalty at 25% when, of course, the statutory penalty under Georgia law for bad faith is 50%.

The Altmans and the Bank entered into a good faith effort to attempt to mediate this matter in September 2007.  From their perspective, the mediation accomplished virtually nothing for two reasons:  (1) Because the errors and omissions carrier for the Files Agency <u>at that time</u> insisted that there be an equal contribution toward settlement by PSIC; and, (2) Because PSIC was (and still has been) willing to offer only $25,000.00 for its share of any settlement[6].

Subsequently, there have been substantial settlement efforts on the part of the Altmans and the Files' E&O carrier.  In a significant move, the latter dropped its insistence upon an equal contribution by PSIC and substantially increased its offer.  There has thus far been no further contribution offered by PSIC and the parties have been unable to reach a settlement agreement.

RESPECTFULLY SUBMITTED this   29th   day of January, 2008.

    /s/ David T. Whitworth
DAVID T. WHITWORTH
Georgia State Bar No. 757050
Attorney for Defendants/Counter-claimants

WHITWORTH LAW FIRM, P.C.
Post Office Box 1055
Brunswick, Georgia  31521-1055
(912) 264-8884

---

[6]It is curious that PSIC was willing, in February 2007, to buy the Altmans' rights against Files for $125,000.00, but now refuses to pay more than $25,000.00 to the Altmans for their extensive and continually accruing damages.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing Settlement Memorandum with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

>Paul Burke, Esq.
>Christopher J. O'Donnell, Esq.
>Drew Eckl & Farnham, LLP
>Post Office Box 7600
>Atlanta, Georgia  30357-0600
>
>ATTORNEYS FOR PLAINTIFF
>
>James T. McDonald, Jr., Esq.
>Swift, Currie, McGhee & Hiers, LLP
>1355 Peachtree Street, N.E., Suite 300
>Atlanta, Georgia  30309
>
>ATTORNEY FOR INTERVENORS (FILES)

This _____ day of January, 2008.

>DAVID T. WHITWORTH
>Georgia State Bar No. 757050
>Attorney for Defendants/Counter-claimants

WHITWORTH LAW FIRM, P.C.
Post Office Box 1055
Brunswick, Georgia  31521-1055
(912)264-8884